**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Martin Garo and Barbara Garo, on behalf of themselves and all others similarly situated,

    Plaintiffs,

vs.

Global Credit & Collection Corporation,

    Defendant.

No. CV-09-2506-PHX-GMS

**ORDER**

Pending before this Court is Defendant's Motion For Partial Summary Judgment (Doc. 35), Plaintiff's Motion to Certify Class and Appointment of Class Counsel (Doc. 40), and Defendant's Motion for Leave to File Supplemental Authority In Support of Its Opposition to Plaintiff's Motion for Class Certification (Doc. 83). For the reasons stated below Defendant's Motion for Partial Summary Judgment (Doc. 35), is granted and summary judgment is entered on Count V in Defendant's favor and against Plaintiffs. As a result, Plaintiffs' Motion to Certify Class is denied in part as it pertains to the certification of a TCPA subclass.

Defendant's Motion for Leave to File Supplemental Authority is granted in part and denied in part. Nevertheless, even after considering in part the late case authority contained in Defendant's motion to supplement, the Court does not find that authority persuasive. Thus, Plaintiffs' Motion to Certify is granted to the extent it seeks to certify a class for purposes of pursuing its FDCPA claims against Defendant. Plaintiffs' counsel are approved

as adequate class counsel.

## BACKGROUND

Plaintiffs Barbara and Martin Garo are residents of Arizona and have been married for many years. They incurred credit card debt to Capital One Bank for personal, family or household purposes. Second Amended Complaint ("SAC") at Doc. 36 at ¶¶ 1-3. Defendant Global Credit & Collection Corporation ("Global") placed automated calls to the Garo's residence in an attempt to collect the debt. All five of the counts in the SAC against Global are based on Global's asserted violation of, or failure to comply with, the requirements of federal law in placing the automated calls and leaving the automated messages at Plaintiffs' residence. The first four of Plaintiffs' counts are based on the alleged failure of Defendant to comply with the requirements of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The Fifth Count is brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(B) et. seq. Plaintiffs have not named or attempted to name Global's affiliated corporations such as Global International Inc., as defendants in this matter, nor does their Complaint contain any alter ego allegations as to Defendant Global and its "sister" corporations.

Defendant's motion seeks summary judgment on the TCPA claim only. With its Motion for Partial Summary Judgment on count V, Global filed the required Statement of Facts (Doc. 36). In its Statement of Facts, Global first acknowledges that, as alleged in the SAC: (1) Plaintiffs are consumers as defined by the FDCPA; (2) Defendant is a debt collector as defined by the FDCPA; and (3) Plaintiffs claim they were allegedly obligated to pay a debt to Capital One Bank incurred for personal, family or household purposes. Doc. 36 at ¶¶ 1-3. Also filed with the Statement of Facts was the affidavit of Defendant's Compliance Manager, Daniele DePaolis. The DePaolis affidavit avers that: (1) Defendant Global is in the business of collecting debts on behalf of third party clients; (2) All calls initiated by Global are to debtors who allegedly owed debts to Global's creditor clients; (3) Global is not in the business of encouraging the purchase or rental of, or investment in property, goods or services and has not placed any calls to the Plaintiffs for such purposes; and (4) Global is not

in the business of advertising the commercial availability or quality of property, goods or services and did not place any calls to the Plaintiffs for such purposes. Id at ¶ ¶ 5-8.

## ANALYSIS

### I.     Motion for Partial Summary Judgment

Defendants may move for summary judgment based on a defense to a claim. Fed. R. Civ. P. 56(a). ("A party may move fore summary judgment, identifying each claim or defense . . . on which summary judgment is sought.") Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). District courts "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record including depositions, documents, electronically stored information, affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A).

In their Response, Plaintiffs acknowledge that commercial calls that do not encourage the purchase, rental of, or investment in property, goods or services and that do not "advertise the commercial availability or quality of any property, good or service" are exempted by FCC regulations from the scope of the TCPA See 47 U.S.C. § 227(b)(1)(B) (allowing the FCC to exclude certain classes of calls from the TCPA by regulation), and 47 C.F.R. § 64.1200(a)(2) (exempting from the TCPA calls "made for a commercial purpose [that do] not include or introduce an unsolicited advertisement or constitute a telephone solicitation.") See also C.F.R. § 64.1200(f) (further defining "telephone solicitation" for purposes of the exemption as "the initiation of a telephone call or message for the purpose of encouraging

1 the purchase or rental of, or investment in, property, goods, or services. . . "and defining
2 "unsolicited advertisement" as "any material advertising the commercial availability or
3 quality of any property, goods or services. . .")

4     Daniele DePaolis, Defendant's Compliance Manager, has avowed to this Court that:
5 (1) Global is not in the business of encouraging the purchase or rental of, or investment in
6 property, goods or services and has not placed any calls to the Plaintiffs for such purposes;
7 and (2) Global is not in the business of advertising the commercial availability or quality of
8 property, goods or services and did not place any calls to the Plaintiffs for such purposes.
9 Doc. 36 at ¶¶ 5-8. Thus, unless an issue of fact is raised as to Mr. DePaolis's testimony,
10 Defendant is exempt from the prohibitions of the TCPA.

11     Nothing in the actual text of the automated messages of which Plaintiffs complain
12 demonstrates or suggests that the call was placed to encourage the purchase, rental of, or
13 investment in property goods or services, nor that the call was placed to advertise the
14 commercial availability or quality of property, goods or services. Plaintiffs have had
15 adequate time to depose Mr. Depaolis, or conduct other discovery that would raise a genuine
16 issue of fact as to whether Global is in the business of "encouraging the purchase or rental
17 of, or investment in property, goods or services," or whether Global "advertises the
18 commercial availability or quality of property good or services." Plaintiffs, however, have
19 not done so.

20     Rather, Plaintiffs appear to attempt to assert that a genuine issue of material fact exists
21 because a website operated by a corporate affiliate or affiliates of Global infers that the
22 affiliates offer services to their clients. Nevertheless, Plaintiffs have not named such
23 affiliated corporations as defendants in this matter, nor have they included any allegations
24 in their Complaint that the sister organizations are the alter egos of Defendant, nor have
25 Plaintiffs sought to timely amend their Complaint to include such allegations, or otherwise
26 suggest that the services provided were other than debt collection services on behalf of
27 creditors and that thus the calls that were made to debtors were not placed by the Defendant
28 in the hope of offering, advertising or promoting any good or service. Thus, Plaintiffs have

- 4 -

not raised a genuine issue of material fact as to whether Defendant Global engages in activities that are prohibited by the TCPA..[1]

The Court thus grants summary judgment in Global's favor on Count V of the Complaint.

## II.     Motion For Leave To File Supplemental Authority

To the extent Plaintiffs' motion seeks to have an FDCPA class certified, Defendant files motion for leave to file supplemental authority. The motion argues that Defendant became aware of one legal argument and one factual argument after the briefing on Plaintiffs' Motion to Certify. Defendant thus seeks to supplement its opposition by making these two specific argument. The Court will grant the motion to the extent it requests the Court to consider the *Hutton* case, it will deny the motion to the extent it requests the Court to consider the *Sonmore* case.

### A.     The *Hutton* Case.

First, Defendant argues that a recent decision, *Roseanne Hutton v. D.B. Accounts, Inc.*, 2010 WL 5070882 (C.D. Ill. 2010), demonstrates that individual issues predominate in this case and that thus an FDCPA class should not be certified. Because *Hutton* was decided on December 3, 2010, after Defendant filed its Response to Plaintiffs' Motion to Certify the Class in this case, and only a matter of days before this Court filed its December 9 Order indicating that it determined that Plaintiffs had satisfied the numerosity, commonality and typicality requirements, the Court will grant Defendant's motion for supplementation in this respect and consider Defendant's argument concerning *Hutton*.

In *Hutton*, the debt collector, C.B. Accounts, Inc., sent nine collection letters to Hutton that complied with the requirements of the FDCPA. In addition, C.B. Accounts spoke with Hutton on the phone "numerous times" regarding her debt. Subsequently an employee at C.B. Accounts left a voice mail for Hutton that stated "Urgent message. This is for Roseanne

---

[1] To the extent that Plaintiffs' argument also depends on their assertion that Martin Garo is not, in fact, a debtor, this assertion seems to be contradicted by the plain terms of Arizona community property law as well as the SAC ¶ 9.

- 5 -

1 Hutton. Roseanne, this is Kyeisha [ph] calling you. I need you to return my phone call. The
2 number is 866 207 8464." As a result of the call, Hutton sought to certify a class of
3 plaintiffs who had received similar automated phone messages from C.B. accounts in
4 violation of the requirements of the FDCPA because the phone message did not identify C.B.
5 Accounts as a debt collector or state that the call was for collection purposes,.

6 In refusing to certify the class, the *Hutton* Court analogized the case to a case in which
7 the Seventh Circuit affirmed the trial court's refusal to certify a class brought under the
8 Illinois Consumer Fraud Act. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) In
9 that case, in which Plaintiff's asserted that Defendant had violated the Illinois Consumer
10 Fraud Act by manipulating the gas supply, the Court determined that the elements of a claim
11 would require the court "to make individual determinations concerning why a plaintiff
12 bought gasoline from a particular supplier (e.g., price, necessity, convenience, location or
13 quality of gasoline) to discern whether the defendants' conduct proximately caused each
14 plaintiff's injuries." *Id.* at 936. Thus, the *Siegel* Court determined, the resolution of the
15 question of proximate cause necessitated consideration of the facts pertinent to each claimant,
16 and thus the claims were not of the type that were appropriate for class resolution because
17 individual issues predominated. Analogizing to *Siegel*, the *Hutton* court refused to certify an
18 FDCPA class due to the predominance of individual issues pertaining to whether the
19 Defendant's violation of the FDCPA was the "proximate cause" of damages to the Plaintiffs.

20 Defendant in this action urges the Court to follow *Hutton*. Defendant asserts for the
21 first time in its motion for leave to supplement that prior to Global leaving either of the
22 automated messages at Plaintiffs' home, Plaintiff Barbara Garo had received from Global an
23 initial communication that complied with the requirements of the FDCPA. Defendant further
24 asserts that this initial communication to Plaintiffs contained the same phone number that
25 was left in the automated messages on Plaintiffs' answering machine. Defendant thus argues
26 that, following the logic of *Hutton,* individual issues predominate in this case in determining
27 whether any particular automated message proximately caused harm to the claimant under
28 the FDCPA.

1       There are two problems with this argument. First there is nothing in the FDCPA that
2 requires plaintiff to prove causation of actual damages to set forth a claim under the FDCPA.
3 Rather, once a plaintiff has established a violation of the FDCPA provisions, whether as an
4 individual or as a class, plaintiff is entitled to both actual and statutory damages. 15 U.S.C.
5 § 1692k(a). If the plaintiff class can establish no actual damages, it is still entitled to
6 specified statutory damages. *Knoll v. Allied Interstate, Inc.*, 502 F. Supp. 2d 943 (D. Minn.
7 2007); *McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F. Supp.2d 1166 (D. Kan.
8 2007); *Woolfok v. Ban Ru Credit Corp.*, 783 F. Supp. 724 (D. Conn. 1990). Thus, to the
9 extent that the award of statutory damages is at issue in this case, there is a question common
10 to all members of the class that does not require that there be an investigation into the
11 proximate causation underling each class member's claim.

12       Second, the text of the FDCPA requires specific disclosures in the initial
13 communication between a debt collector and a consumer and further requires that in any
14 subsequent conversations between them the debt collector identify "that the communication
15 is from a debt collector." 15 U.S.C. § 1692e(11). In the facts of *Hutton,* it was not contested
16 that the debt collector had numerous previous phone conversations with the plaintiff prior
17 to leaving her the voice mail message. In the phone message left by the debt collector after
18 these numerous phone conversations, the caller identified herself as Kyeisha and asked the
19 consumer to call her back. In light of the numerous previous phone calls between the debt
20 collector and Hutton, it may be that the caller's identification of herself as Kyeisha was
21 sufficient to identify herself to Ms. Hutton as an agent of C.B. Even assuming this is so, and
22 even assuming that such an informal identification satisfied the requirements of the FDCPA,
23 there are no similar facts here.

24       In this case, the text of the automated telephone messages did not identify the caller
25 in any fashion. The fact that a debt collector may leave a message, in which the debt
26 collector is otherwise unidentified, to contact the consumer at a phone number that had
27 previously been contained in the debt collector's correspondence with the consumer is
28 insufficient to identify the subsequent communication as being from a debt collector as is

- 7 -

1 required by section 1692e(11). Further, such a request does not constitute "meaningful
2 disclosure of the caller's identity" as is required by 15 U.S.C. § 1692d(6). *Costa v.. National*
3 *Action Financial Services*, 634 F. Supp. 2d 1069 (E.D. Cal. 2007); *Hosseinzadeh v. M.R.S.*
4 *Associates, Inc.,* 387 F. Supp. 2d 1104, 1115 (C.D. Cal. 2005). Thus, consideration of
5 *Hutton* does not lead this court to believe that certification of an FDCPA class is
6 inappropriate.

      **B.**    **The *Sonmore* Case.**

8 Second, the Motion to Supplement also asks this Court to consider in addition to its
9 previous arguments, a second affidavit of Daniele DePaolis executed earlier this month., and
10 *Sonmore v. Checkrite Recovery Services, Inc.,* 296 F.R.D. 257 (D. Minn. 2001) a case
11 decided in 2001.

12 The reason that Defendant asks the Court to permit supplementation is because "in
13 response to this Court's December 9, 2010 Order," Global conducted a preliminary
14 investigation of the number of likely class members. After having conducted this inquiry,
15 and assessing its net worth, and then taking into account the statutory cap on class action
16 recoveries, see 15 U.S.C. § 1692k(a)(2)(B), Global asserts that "the potential recoverable
17 damages to each class member in an FDCPA class would be less than $1.00." Thus, Global
18 argues, that a class action would not be practically meaningful, and according to *Sonmore*
19 would not be a superior method of adjudicating the claims which is a requirement for class
20 certification pursuant to Fed. R. Civ. P. 23(b)(3).

21 The Court, however, declines to consider this argument at this stage of the litigation.
22 On May 7, 2010, this Court set September 30, 2010 as the deadline for the filing of a class
23 certification motion, with a deadline for factual discovery of February 28, 2011. Plaintiffs
24 complied with the deadline for filing the class certification motion, and Defendant filed a
25 timely response on October 15, 2010. Obviously Defendant did not raise in its response the
26 assertion that the ultimate possible class recovery would be less than $1.00 per person. To
27 the contrary its assertion in that Response was that Plaintiffs could not successfully establish
28 numerosity because, while it had records indicating to which persons it had left automated

- 8 -

1 phone calls, it was unable to determine the text of such calls and thus neither it, nor Plaintiffs
2 could establish numerosity. Among other grounds, Defendant also resisted the extensive
3 financial discovery sought by Plaintiffs on its assertion that its financial performance was
4 not relevant until the class was certified. Given the lack of any argument against class
5 certification that related to Defendant's financial position, and the excessive nature of the
6 financial discovery sought, the Court agreed with Defendant's position.

7 After the Court ruling against them on the numerosity argument, Defendant apparently
8 became capable of at least estimating the number of class members in the class. After having
9 done so, and determined its own net worth, it now asks the Court to consider an argument
10 relating to class certification that it could have timely made prior to class certification, but,
11 strategically did not. Allowing the parties to raise new arguments at this point, would only
12 serve to require additional discovery on matters that should by now be resolved. "At an early
13 practicable time after a person sues or is sued as a class representative, the court must
14 determine by order whether to certify the action as a class action." Fed. R. Civ. P.
15 23(c)(1)(A). The Court will not allow the parties to engage in the sort of piecemeal litigation
16 in which they raise new issues to reargue the Court's rulings. Therefore the Court, at this
17 time, declines to consider the supplemental authority supplied by Defendant, and will
18 proceed to rule on the Motion to Certify in this case.

19 **III. Motion to Certify**

20 Plaintiffs' Motion seeks to certify the Garos as adequate class representatives for both
21 of two subclasses, one to assert FDCPA claims against Defendant, and the other to assert
22 TCPA claims against Defendant. Because Plaintiffs have no TCPA claims against
23 Defendant, their Motion To Certify, is denied to the extent that it seeks to have the Garos
24 certified as representatives to pursue TCPA claims against Defendants. Nevertheless, for the
25 reasons set forth in this Order and in its previous Order of Dec. 9, 2010, the Court certifies
26 the Garos as representatives of a class consisting of all persons located in the Ninth Circuit
27 who, within one year before December 2, 2009, received a voice message from defendant in
28 connection with an attempt to collect any consumer debt, where the text of the voice message

was substantially similar or materially identical to the prerecorded messages delivered to Plaintiffs on October 7, as alleged in Plaintiffs' Second Amended Complaint ¶¶ 34 and 36.

The Court further appoints the law firm of Weisberg & Meyers, LLC as class counsel.

The Court is mindful that "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 26(1)(C). Thus, although the Court declined to consider the *Sonmore* argument prior to certifying the class for the reasons above-specified, its refusal to do so is without prejudice to such a reconsideration depending on the issues to be presented. Therefore,

**IT IS HEREBY ORDERED:**

1. Granting Defendant's Motion For Partial Summary Judgment (Doc. 35) and dismissing Count V of the SAC.

2. Granting in part and denying in part Defendant's Motion for Leave to File Supplemental Authority (Doc 83) as explained in more detail above.

3. Granting in part and denying in part Plaintiff's Motion for Class Certification (Doc. 40).

4. Certifying Barbara and Martin Garo as representatives of a class consisting of all persons located in the Ninth Circuit who, within one year before December 2, 2009, received a voice message from Defendant in connection with an attempt to collect any consumer debt, where the text of the voice message was substantially similar or materially identical to the prerecorded messages delivered to Plaintiffs on October 7, as alleged in Plaintiffs' Second Amended Complaint ¶¶ 34 and 36.

5. The Court further appoints the law firm of Weisberg & Meyers, LLC as class counsel. Defendant.

DATED this 25th day of January, 2011.

_____
G. Murray Snow
United States District Judge

- 10 -